**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GOETZ BAIER,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>PRINCETON OFFICE PARK, et al.,<br><br>　　　　　Defendants. | Civil Action No.: 08-5296 (PGS)<br><br>**MEMORANDUM & ORDER** |

　　　　This is case is a contract dispute involving an interest in real property. Presently before the Court are three motions. First, Plaintiff Goetz Baier ("Plaintiff") moves for summary judgment against Defendant United States Land Resources (USLR) (ECF No. 37). Second, Defendants USLR, Princeton Office Park (Princeton), G.E.W. Building Associates (GEW), United States Realty Resources (USRR), and Lawrence S. Berger (collectively "Defendants") have cross-moved against Plaintiff for summary judgment (ECF No. 41.). Third, Plaintiff has moved to Strike Defendant's March 17, 2011 Submission to the Court (ECF No. 55.).

**I.　　BACKGROUND**

　　　　At the outset, the Court notes that Plaintiff represents that "[t]his is not a complicated case"; however, the Court does not agree with that view. To the contrary, the Court finds the factual background and the relationship of the parties and corporations with which they are involved to be particularly complex.

Plaintiff Goetz Baier is a German citizen, presently living in Switzerland. At some point, Baier and his father made investments in a German trust corporation, known as Success Treuhand GmbH (Success). Eckhart Straub is the founder of Success. Straub and Lawrence S. Berger are shareholders of United States Realty Resources (USRR), a closely held New Jersey Corporation. As such, Berger and Straub allege they have limited liability. USRR is the general partner of United States Land Resources (USLR), a New Jersey limited partnership.

As part of its business, USLR forms entities, generally limited partnerships, whose single purpose are to acquire, own, develop, operate, lease, and at times, sell specific parcels of real property. USLR is typically the general partner in these limited partnership entities. As general partner, it makes management decisions for those entities. USLR's president is Berger, who manages the business operations of USLR and the entities that USLR manages and controls. USLR furthers its business operations, in part, through investors participating in specific real estate ventures as limited partners in the entity which owns the real estate. Success is one such investor and has invested in two limited partnership entities related to this case – (1) Defendant Princeton Office Park, L.P. (Princeton) and (2) Defendant GEW Building Associates, L.P. (GEW). USLR serves as the actual or general partner to both Princeton and GEW.

The limited partnership at the heart of this case is Princeton. Princeton holds title to real property located at 4100 Quakerbridge Road, Trenton, New Jersey. It appears that the parties agree that Plaintiff and his father invested $750,000 in Success for an interest in real estate; however, Plaintiff maintains that he invested the monies with Princeton, whereas Defendants maintain that Plaintiff's investment was with Success and that Success held Plaintiff's interest in Princeton. At oral argument, it was unclear whether Baier was an owner of real estate in Princeton or a shareholder

2

or partner of Success with an interests in real estate. This dispute alone requires a trial of the facts. Nevertheless, by June 2005, Plaintiff had expressed a desire to withdraw his interest in Princeton.

On June 30, 2005, it appears that Plaintiff's attorney, Professor Strobl-Albeg, met with Straub and Berger in Stuggart Germany. Plaintiff was not at the meeting. During the meeting, a handwritten note was produced containing four points. Point One is most relevant to this case, it states: "Mr. Baier gets back his 100% interest in Princeton (possible withold [sic] tax, to be checked in time acc. 3." The initials of both Boorberg and Berger appear at the bottom of the document. The remaining facts of the meeting are contested. Plaintiff maintains that the handwritten note provided that in exchange for his interest in Princeton, he would receive a 100% return on his investment in Princeton. Plaintiff also contends that Berger signed the document on behalf of USLR and that Plaintiff believed that Berger was signing the agreement for all the Defendants. Defendants take the position that the meeting was to discuss an exit strategy for Plaintiff's multiple investments with Success and that Boorberg wrote down the four points to memorialize the tasks that would need to be completed for a transaction to occur.

Following the meeting in Stuggart, Strobl-Albeg and Berger engaged in a series of correspondence regarding the structure of the repurchase of Plaintiff's interests, which show a dispute of the facts. The following correspondence is noteworthy:

- On August 15, 2005, Strobl-Albeg wrote to Berger: "It must be clear, that the General Release only and exclusively concerns the G.E.W. Building Ass. Ltd. Partnership and not further investments of Mr. Baier as Princeton or Wedgwood. . . . "

- On September 16, 2005, Berger wrote to Strobl-Albeg and Dr. Antonia Stein that he did not have a problem with the proposed changes to the release and noted: "In addition, as part of this transaction, Mr. Baier agreed to re-sell his interest in the Princeton and Wedgwood investments back to the company at par. I would suggest that we prepare a simple option document with payment due no later than December 31, 2005."

- On October 3, 2005, Berger advised Strobl-Albeg that he had wired the funds to Success for Plaintiff's investments in G.E.W. and also stated: "I would appreciate Mr. Baier's signing the enclosed copy of this letter evidencing his agreement to sell his Wedgwood participation for the sum of $40,000, as well as his agreement to USLR's repurchase of his interest in the Princeton project for the sum of $750,000 payable no later than December 31, 2005."

- Strobl-Albeg responded on October 5, 2005, stating "[n]obody spoke about the necessity of an option document for the repayment of the Princeton investment and no one was ever talking about that the Princeton question is a part of the GEW Building Transaction. . . ."

- In that same letter, however, Strobl-Albeg indicated that "Mr. Baier would agree on a 'package-deal'" and set forth six conditions for a package-deal to cash out Plaintiff's investments in Princeton and Wedgwood.

- On October 13, 2005, Strobl-Albeg wrote to Berger to confirm that "[t]o come finally to an end, Mr. Baier would agree with the proposed $750,000 net paid latest December 31st, 2005 for the Wedgwood investment paid together with the 1,112,420.30 for the G.E. Building."

- It appears that on October 25, 2005, Baier executed the agreed upon General Release and on October 26, 2005, signed Berger's letter of October 3, 2005, agreeing to the repurchase of his interest in Wedgwood and Princeton no later than December 31, 2005.

- On December 20, 2005, however, Berger advised Strobl-Albeg that he could not repurchase the Princeton property by the end of 2005. It appears that Berger initially agreed to pay 5% interest for the late payment and indicated that the purchase date would be extended to February 15, 2006.

- On February 14, 2006, one day before the new closing date, Berger wrote to Strobl-Albeg: "Unfortunately, the closing which we had planned for February 15, 2006 ran into some problems and will not close, in fact, until March 31, 2006." Berger also agreed to pay interest.

- On March 20, 2006, Berger again indicated that the closing could not occur by month's end and that he would need at least another 30 days for the closing.

- On October 25, 2006, Berger wrote a letter directly to Plaintiff Baier, stating: "This is to acknowledge that USLR is obligated to pay interest at the rate of 10% per annum from January 8, 2006 on the $750,000 purchase price. Please be informed that it is our intention to pay all accrued interest at the time that we pay the principal sum."

- Ultimately, Berger never repurchased Baier's interest in Princeton.

4

In 2007, Plaintiff sued Success in Germany for the alleged agreement to purchase Plaintiff's investment in Princeton for $750,000, plus interest. Apparently finding no contract between Plaintiff and Success, Plaintiff was unable to prevail in Germany at the trial or appellate level.

On September 9, 2008, Princeton filed for Chapter 11 Bankruptcy, but did not list Baier as a creditor. On October 10, 2009, Baier filed a motion for leave to file a proof of claim against Princeton for $750,000, plus interest. Princeton filed a Verified Motion in Support of the Entry of an Order Disallowing and Expunging the Claim of Goetz Baier on January 5, 2010.

The Verified Motion, verified by Berger, contained the following representations:

> 16. Upon information and belief, in June 2005, Baier sought to withdraw his investment with Success. By a Handwritten Note, dated June 30, 2005, USLR agreed to purchase Baier's investment with Success for $750,000. The Handwritten Note does not evidence an obligation of the Debtor to Baier.
>
> 17. On or about October 25, 2005, Baier provided a Release to various parties including the Debtor. Although the Debtor is listed as one of the Releasees under the Release, the Debtor is not a party to any agreement and the Release is executed solely by Baier. The Release expressly states that payments to Baier by USLR would be made 'on the bank account of [Success] for the benefit of [Baier]'. . . . The Release des not evidence an obligation of the Debtor to Baier.
>
> 19. On October 12, 2006, by letter addressed to Mr. Straub of Success, Baier made demand for the $750,000. By letter dated October 25, 2006, USLR acknowledged that USLR is obligated to pay interest at the rate of 10% per annum to Baier on the $750,000 purchase price and to pay all accrued interest at the time USLR pays the principal sum.

On June 10, 2010, the Bankruptcy Court granted Princeton's Motion to Expunge Baier's claim. In ruling on the Motion to Expunge, the bankruptcy judge concluded that "the evidence points only to, at a bare minimum, USLR as being the obligor." Baier appealed the bankruptcy decision to the District Court and on February 2, 2011, Judge Anne E. Thompson affirmed the Bankruptcy Court's

expungement of Baier's claim finding that such decision was not clearly erroneous.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (internal quotations omitted). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). Once the moving party has satisfied its initial burden, the party opposing the motion must establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985).

## III. DISCUSSION

### A. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment solely against Defendant USLR, based primarily on the representations made by Berger in his Verified Motion before the Bankruptcy Court. Plaintiff argues that he should be granted summary judgment because (1) there is clearly a contract between USLR and Plaintiff for USLR to buy Plaintiff's interest in Princeton for $750,000, plus interest, which totals $1,100,000; (2) USLR's failure to pay Plaintiff $750,000 constitutes a breach of

6

contract; and (3) Defendants cannot off-set possible interest and penalties they may, or may not, incur because they failed to pay over the GEW withholding on time. The Court need only address the first two arguments to resolve this motion.

To establish a breach of contract claim, "a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract, and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007); *Video Pipeline, Inc. v. Buena Vista Gome Entm't, Inc.*, 210 F. Supp. 2d 552, 561 (D.N.J. 2002). Here, the Plaintiff has not met his burden of establishing a breach by showing uncontroverted facts of such contract. *See JCP&L Co. v. Township of Lacey*, 772 F.2d 1103, 1109 (3d Cir. 1985).

In the Court's view, Plaintiff has not clearly articulated the terms of the contract, how Defendants' actions or inactions constitute a breach, or when Defendants breached the contract. Rather, Plaintiff merely states that USLR has failed to pay the $750,000 and interest as evidence of the breach. In regards to USLR's obligation to pay $750,000 for Plaintiff's interest in Princeton, Plaintiff puts forth evidence of the correspondence between Strobl-Albeg and Berger, which show that the parties were continuously altering the material terms of any agreement that may have been in existence. However, Plaintiff does not point to one document or a series of documents that evidence the terms of an agreement after the letter of October 25, 2006.

Similarly, Plaintiff's assertion that USLR breached its agreement by failing to pay interest is without clear evidence in the record. Without knowing what the material terms of the agreement were, the Court cannot conclude as a matter of law that Defendants breached. Indeed, it is possible that Plaintiff failed to abide by a term of the agreement, thereby excusing Defendants' obligations

under the contact. Therefore, Plaintiff's motion for summary judgment is denied because Plaintiff has not met its burden of establishing a breach of contract claim as a matter of law.

### B.   Defendants' Cross-Motion for Summary Judgment

Defendants have also moved for summary judgment, arguing that they are entitled to summary judgment because Plaintiff cannot maintain an action for breach of contract because Plaintiff is unable to prove any damages. Defendants maintain that Plaintiff bears the burden of establishing all elements of a breach of contract claim at trial and that Plaintiff cannot show damages with expert testimony. Defendants assert that expert testimony is needed on the issue of damages because the market value of Plaintiff's interest in Princeton requires a valuation of real property, which is outside the common experience and knowledge of the trier of fact. Because Plaintiff has not produced an expert, Defendants argue they are entitled to summary judgment.

As previously noted, on a motion for summary judgment, the moving party has the burden of establishing that it is entitled to judgment as a matter of law. Defendants maintain that if there is a contract between the parties, it is an executory contract and that "[t]he general rule for the measure of damages in cases of an executory contract, for the sale of an article at a fixed price is the difference between such contract price and the market value of the article on the day and at the place of delivery." (quoting *Massman v. Steiger*, 79 N.J.L. 442, 444 (Sup. Ct. 1910)). In Defendants' view, Plaintiff must prove the market value of the interest in Princeton on the date of the breach and prove that the value of the current interest in Princeton is less than the contract price of $750,000, plus interest. Defendants argue that it is necessary to retain an expert to prove the market value of Plaintiff's interest in Princeton because the market value of an interest in real estate is beyond the knowledge and understanding of the average juror.

The Court concludes that Defendants have not established as a matter of law that Plaintiff must have an expert to establish damages at trial.  The Court does not necessarily take issue with Defendants' contention that an expert might be needed to prove the market value of Plaintiff's interest in Princeton.  Rather, the Court does not believe that Defendants have established as a matter of law that there was an executory contract in light of the fact that neither party to this action has been able to articulate clearly, which documents establish the presence of a contract and neither party has been able to clearly set forth each party's obligation under such a contract.  Without a clear statement to this Court of the parties' obligations under the contract, the Court is precluded from deciding whether this contract is executory in nature.  Therefore, Defendants have not met their burden of establishing that no genuine issue of material fact exists as to whether Plaintiff can prove damages at trial.  Accordingly, the Court will deny Defendants' cross-motion for summary judgment.

    **C.**    **Motion to Strike/Objection to Defendants' March 17, 2011 Submission**

Finally, the Court will address Plaintiff's Motion to Strike Defendants' March 17, 2011 submission.  Following briefing on the cross-motions for summary judgment, on March 17, 2011, Defendants filed various correspondence with the Court for further consideration, which Defendants maintain demonstrate "that Mr. Baier's interest in Princeton Office Park was never transferred to Defendants."  Defendants explained that "[t]hese documents were not included with the original motion papers because Mr. Baier had not maintained that he had transferred his interest in Princeton Office Park until he did so in his reply papers on his motion for summary judgment."  Plaintiff has objected to the consideration of such documents and has moved to strike them, asserting that they constitute settlement communications and thus are inadmissible under Federal Rule of Evidence 408.

While this Court has read the parties submissions with regard to whether the documents must

9

be deemed inadmissible under Federal Rule of Evidence 408, the Court nevertheless concludes that Defendants' submission constitutes a sur-reply.  Local Civil Rule 7.1(d)(6) clearly states that "[n]o sur-replies are permitted without permission of the Judge or Magistrate Judge to whom the case is assigned."  *See also In re Ford E-350 Van Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 68241 (D.N.J. July 9, 2010 (granting motion to dismiss because "Plaintiff's letter and affidavit, filed without permission from the Court, constitute improper sur-replies").   Because Defendants did not obtain permission to file a sur-reply as required by Local Civil Rule 7.1(d)(6), the Court will not consider the documents on summary judgment.  Consequently, Plaintiff's motion to strike is rendered moot.

    **THEREFORE**, IT IS on this 24th day of October, 2011

    **ORDERED** that Plaintiff's motion for summary judgment is denied (ECF No. 37.); and it is further

    **ORDERED** that Defendants' cross-motion for summary judgment is denied (ECF No. 41.); and it is further

    **ORDERED** that Plaintiff's motion to strike is moot (ECF No. 55.).


                              *s/Peter G. Sheridan*
                              PETER G. SHERIDAN, U.S.D.J.

October 24, 2011